UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

M.O.C.H.A. SOCIETY, INC., et al.,

                              Plaintiffs,

        -vs-                                              03-CV-580-JTC

CITY OF BUFFALO,

                              Defendant.

---

In the complaint in this case, plaintiffs M.O.C.H.A. Society of Buffalo, Inc. ("M.O.C.H.A."),[1] and individual City of Buffalo firefighters Emanuel C. Cooper, Greg Pratchett, and Russell Ross seek relief pursuant to 42 U.S.C. §§ 2000e, *et seq.* (Title VII), 1981, and 1983 on behalf of a proposed class alleging that the City discriminated against African-Americans when it promoted firefighters to the job of Fire Lieutenant based on the scores of a promotional examination administered on April 6, 2002 (the "2002 Lieutenant's Exam"). The City moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing the case on the ground that the court's finding in a related case, *M.O.C.H.A. Society, Inc. et al. v. City of Buffalo et al.*, No. 98-CV-99-JTC, 2009 WL 604898 (W.D.N.Y. March 9, 2009) ("*M.O.C.H.A. I*"), has conclusively established that the Exam is a valid, nondiscriminatory employment selection procedure as a matter of law.

---

[1] M.O.C.H.A. is a not-for-profit organization of African-American firefighters employed by the City of Buffalo whose stated purpose is "to promote understanding, friendship and cooperation among all members of the fire department of the City of Buffalo; to see that competent Blacks are recruited and employed as firefighters; [and] to encourage and aid in the advancement of Blacks to elevated ranks within the fire department . . . ." *M.O.C.H.A. Society, Inc. v. City of Buffalo*, 199 F. Supp. 2d 40, 44 (W.D.N.Y. 2002).

For the reasons that follow, the City's motion is granted.

## BACKGROUND

The following facts are not in dispute. In March, 1998, the City administered the "Lower Level Fire Department Promotional Series" examination (the "1998 Lieutenant's Exam"), which was developed by the New York State Department of Civil Service Testing Services Division under the primary direction of Associate Personnel Examiner Wendy Steinberg. The Exam was provided pursuant to a request by the City for examination services, in accordance with Section 23 of the New York Civil Service Law.[2] Ms. Steinberg's work on the Exam encompassed a three-year period between 1994 and 1997, under the supervision of Principal Personnel Examiner Paul Kaiser. *See M.O.C.H.A. I*, 2009 WL 604898, at *2-6.

The results of the 1998 administration of the Lieutenant's Exam were used as the primary criteria for establishing an eligibility list for promotion of firefighters to the rank of Fire Lieutenant, which had a disproportionate adverse impact on African-American firefighters. Anticipating this result, M.O.C.H.A. filed No. 98-CV-99 in February 1998 as a proposed class action claiming that the City's use of the Exam in this manner constituted a discriminatory employment practice in violation of Title VII and Sections 1981 and 1983.

---

[2]Section 23 provides in pertinent part:

> The state civil service department, upon the request of any . . . municipal commission, shall render service relative to the announcement, review of applications, preparations, construction, and rating of examinations, and establishment and certification of eligible lists for positions in the classified service under the jurisdiction of such municipal commission.

N.Y. Civil Service Law § 23(2).

After nine years of mostly contentious litigation, this court conducted a five-day evidentiary hearing in *M.O.C.H.A. I* in July and August 2008 for the limited purpose of determining whether the 1998 Lieutenant's Exam was "job related for the position in question and consistent with business necessity," 42 U.S.C. § 2000e-2(k)(1)(A)(i), as required under Title VII to validate the use of the Exam notwithstanding its disparate impact. Both Ms. Steinberg and Mr. Kaiser testified at the hearing, as did plaintiffs' employment testing expert, Kevin R. Murphy, Ph.D., and the City's Director of Civil Service, Ms. Olivia Licata. Based on the testimony and evidence presented at the hearing, the court determined that the State Civil Service Department had developed the Exam "in a manner that is significantly correlated with important elements of work behavior which are relevant to the position of fire lieutenant as performed in the City of Buffalo," *M.O.C.H.A. I*, 2009 WL 604898, at *18, and that the City had met its burden to establish the Exam's validity under Title VII. Accordingly, the court dismissed M.O.C.H.A.'s complaint to the extent it claimed that the City's use of the test scores to establish an eligibility list for promotion to the rank of Fire Lieutenant was a discriminatory employment practice. *Id.*

Meanwhile, in the latter part of 2001, the City again requested promotional examination services from the State Civil Service Department, and was again provided the "Lower Level Fire Department Promotional Series." The City administered the Exam in April 2002, and used the test scores to establish a new eligibility list for promotion to the rank of Fire Lieutenant, which once again reflected disparate impact on African-American firefighters. M.O.C.H.A. then filed this action, No. 03-CV-580 ("*M.O.C.H.A. II*"), in July

2003, claiming that the use of the 2002 administration of the Exam in this manner constituted employment discrimination in violation of Title VII and Sections 1981 and 1983.

The City now seeks summary judgment dismissing *M.O.C.H.A. II*, based upon the preclusive effect of the court's ruling on the validity of the Lieutenant's Exam in *M.O.C.H.A. I*. The City contends that because the evidence supporting the validity of the Lieutenant's Exam administered in 2002 is the same evidence relied upon by the court to establish the validity of the Lieutenant's Exam administered in 1998, plaintiffs' claims in this action are barred by the doctrine of collateral estoppel.

## DISCUSSION

Under the doctrine of collateral estoppel, a party is precluded from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding. *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *see also United States v. U.S. Currency in Amount of $119,984.00, More or Less*, 304 F.3d 165, 172 (2d Cir. 2002) ("when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit"). "Collateral estoppel saves parties and the courts from the waste and burden of relitigating stale issues . . . and, by discouraging inconsistent results, forwards public policy favoring the establishment of certainty in legal relations." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) (citing 1B J.W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.441[2] (2d ed. 1992)).

Generally, for collateral estoppel to apply, four prerequisites must be satisfied:

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) (citing 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4416 (1981)), *cert. denied*, 480 U.S. 948 (1987). The record before the court, developed over many years in both *M.O.C.H.A. I* and *II*, reveals that these prerequisites have been met.

**1.      Identity of Issues**

"[T]he issue identity prong is satisfied if the pleadings, parties and claims reveal significant similarities" between the issues litigated in the prior action and the present one. *Scheiner v. Wallace*, 832 F. Supp. 687, 695 (S.D.N.Y. 1993); *see also Christopher D. Smithers Foundation, Inc. v. St. Luke's-Roosevelt Hosp. Center*, 2003 WL 115234, at *3 (S.D.N.Y. January 13, 2003). It is not a matter of serious dispute that the dispositive issue in *M.O.C.H.A. II* is identical in all respects to the issue previously litigated in *M.O.C.H.A. I* —namely, whether the facts will ultimately establish that the Lieutenant's Exam developed by the State Civil Service Department and administered by the City is valid as a matter of federal employment discrimination law.

As explained at length in the court's March 9, 2009 decision in *M.O.C.H.A. I*, the use of a written examination to establish a promotion eligibility list having a disparate impact on the basis of race is nonetheless permissible under federal law if the employer can demonstrate that the examination is "'job related for the position in question and consistent with business necessity.'" *M.O.C.H.A. I*, 2009 WL 604898, at *10 (quoting 42 U.S.C.

§ 2000e-2(k)(1)(A)(i)). To make this showing, the employer must establish, "by professionally acceptable methods, that the examination is predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job or jobs for which candidates are being evaluated." *Id.* at *11 (internal quotation marks and citations omitted).

This court found in *M.O.C.H.A. I* that the proof presented at the validity hearing, including the testimony of Ms. Steinberg and Mr. Kaiser, conclusively established that the 1998 Lieutenant's Exam was developed in a manner that was sufficiently job-related and consistent with business necessity for the position of Fire Lieutenant as performed in the City of Buffalo. As set forth in Mr. Kaiser's declaration submitted in support of summary judgment in this action (Item 68), the evidence which the City would present to demonstrate the validity of the Lieutenant's Exam administered by the City in 2002 is identical in all material respects to the evidence considered by the court as sufficient to establish the validity of the Lieutenant's Exam administered in 1998. According to Mr. Kaiser, the 2002 Exam was based upon the same research and analysis performed by Ms. Steinberg in developing the 1998 Exam, both Exams tested the same subject matter with an equal number of questions concerning each topic, the individual questions on the 2002 Exam covered the same content domain as the questions used on the 1998 Exam, and the Testing Services Division scored the 1998 and 2002 examinations in the same manner (*see* Item 68, ¶¶ 5-7).

Plaintiffs have not come forward with any evidence to contest the matters set forth in Mr. Kaiser's declaration, nor have they seriously challenged the identity of the issues regarding the validity of the 1998 and 2002 Lieutenant's Exams. Instead, plaintiffs now

contend that additional discovery—particularly, the depositions of "at leas[t] the 2002 test preparer and the Fire Advisory Committee" (Item 74, p. 6)—is necessary to explore whether the evidence supporting the validity of the two Exams is the same. This contention must be rejected.

Despite the long pendency of this matter and considerable discovery motion practice, there is nothing in the record before the court reflecting any efforts on the part of plaintiffs to obtain the facts sought by this additional discovery, or indicating any intent to subpoena non-party deposition witnesses to testify about the development of the 2002 Lieutenant's Exam. Rather, the record reflects that the parties (and the court) have proceeded throughout the course of this litigation with the understanding that any determination made in *M.O.C.H.A. I* concerning the validity of the 1998 Lieutenant's Exam would apply with equal force to the 2002 Exam. *See, e.g.*, Plaintiffs' Memorandum of Law in Support of Class Certification, Item 16, p. 2 ("Upon information and belief, the [2002] Examination was constructed by the New York Civil Service Department . . . in the same way as the 1998 Fire Lieutenant Examination"); *see also* Item 81, Ex. A (Proposed Stipulation of Facts) ("Any conclusion reached in 98-CV-99C concerning whether the 1998 Fire Lieutenant Examination is 'job related for the position in question and consistent with business necessity' as stated in 40 U.S.C. § 2000e-2(k)(1)(A)(ii) is stipulated to apply to the 2002 Fire Lieutenant Examination.").

Accordingly, the court finds that the pleadings, affidavits, memoranda, and other submissions on file reveal a substantial identity of the dispositive issues and proof regarding the validity of the Lieutenant's Exams litigated in *M.O.C.H.A.I* and *M.O.C.H.A. II*, satisfying the identity of issues prong of the collateral estoppel inquiry.

## 2. Issue Actually Litigated and Decided

The fundamental purpose of the "actually litigated and decided" prong of the collateral estoppel inquiry is to protect the parties from "the burdens and potentially disruptive consequences of permitting a second and possibly inconsistent determination of matters that have been once decided." 18 C. WRIGHT, *supra*, § 4420; *see also Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1485 (2d Cir. 1995) (Collateral estoppel "protects [litigants] from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.") (internal quotation marks and citation omitted). Upon review of the record before the court, there can be no question that this prong has been satisfied.

As stated at the outset of the court's March 9, 2009 decision in *M.O.C.H.A. I*, the very purpose of the five-day evidentiary hearing held in June - August 2008 was to determine "whether the 1998 Lieutenant's Exam was 'job related for the position in question and consistent with business necessity,' as required under Title VII to validate the use of the Exam notwithstanding disparate impact." *M.O.C.H.A. I*, 2009 WL 604898, at *1. The court heard and considered extensive testimony and other evidence regarding the work performed by Ms. Steinberg, Mr. Kaiser, and other Civil Service Department Testing Services Division personnel in developing the Exam. This included a comprehensive content validation study and job analysis, which the court ultimately found "demonstrated a sufficient relationship between the content of the 1998 Lieutenants' Exam and the

content of the job of fire lieutenant" in the City of Buffalo to meet the requirements of Title VII. *Id.* at *16.

Accordingly, the court finds that the issue of the validity of the Lieutenant's Exam was actually litigated and decided in *M.O.C.H.A. I*.

### 3. Full and Fair Opportunity for Litigation

Generally, the party challenging the application of collateral estoppel is charged with the burden to show lack of a full and fair opportunity to adjudicate the claims involving the issue sought to be precluded. *See, e.g., Evans v. Ottimo*, 469 F.3d 278, 281-82 (2d Cir. 2006). In this regard, plaintiffs argue that none of the individual plaintiffs named in *M.O.C.H.A. II* had a full and fair opportunity to litigate their claims in *M.O.C.H.A. I*. However, the doctrine of collateral estoppel "binds not only the actual parties to a lawsuit, but also their privies." *Conte v. Justice*, 996 F.2d 1398, 1402 (2d Cir. 1993), *quoted in Christopher D. Smithers Foundation*, 2003 WL 115234, at *3.

The Second Circuit has expressly held that "literal privity" is not required in order for parties to a subsequent lawsuit to be precluded from relitigating issues that were adjudicated in a previous action. *Alpert's Newspaper Delivery, Inc. v. New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989) (citing *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903 (1977)). As stated in the *Alpert's* case:

> [O]ne whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, even though the first party was not formally a party to the litigation. The issue is one of substance rather than the names in the caption of the case; the inquiry is not limited to a traditional privity analysis.

*Alpert's Newspaper Delivery*, 876 F.2d at 270 (holding that involvement of same trade association as "admitted mastermind and financier" behind two successive lawsuits brought by individual members of the association precluded relitigation of previously litigated issues). Thus, "[t]he presence of a single driving force behind both lawsuits creates sufficient identity between the parties for collateral estoppel to apply." *Christopher D. Smithers Foundation*, 2003 WL 115234, at *3; *see also Ellentuck v. Klein*, 570 F.2d 414, 425-26 (2d Cir. 1978) (sufficient identity of parties where both suits were funded by same property owners' association); *Ruiz v. Commissioner of Department of Transportation of the City of New York*, 858 F.2d 898 (2d Cir. 1988) (sufficient identity of parties where two groups of truck drivers used same attorneys, made identical allegations, and revealed industry-wide strategy challenging a New York vehicle weight regulation in parallel state and federal lawsuits).

In this case, there can be no question that M.O.C.H.A. is the driving force behind the two lawsuits challenging the City's use of the results of two successive administrations of the same Lieutenant's Exam. The same counsel has appeared on behalf of all plaintiffs in both actions, and has vigorously and adequately represented their interests. Based on the controlling Second Circuit precedent cited above, these undisputed facts are sufficient to find that the plaintiffs in this case had a full and fair opportunity in *M.O.C.H.A. I* to litigate the validity of the Exam.

### 4. Previously Litigated Issue Necessary to Support Valid and Final Judgment

It is beyond dispute that the previously litigated dispositive issue regarding the validity of the Lieutenant's Exam was necessary to support a valid and final judgment on

the merits of plaintiffs' Title VII claim in *M.O.C.H.A. I*. As discussed in the court's recent decision in that case granting summary judgment in the City's favor dismissing Second Amended Complaint "B" in its entirety, given the lack of admissible proof of any of the alleged discrete acts of intentional discrimination attributable to municipal policy, resolution of this issue is also dispositive of plaintiffs' disparate treatment claim. *See* No. 98-CV-99, Item 432, at pp. 10-14.

Based on this analysis, and in the absence of any affirmative showing that the evidence supporting the validity of the Lieutenant's Exam administered in 2002 is materially different from the evidence relied upon by the court in *M.O.C.H.A. I* to establish the validity of the Lieutenant's Exam administered in 1998, the court finds that plaintiffs' claims in this action are barred by the doctrine of collateral estoppel.[3] Accordingly, defendants are entitled to summary judgment dismissing this action as a matter of law.

## **CONCLUSION**

For the foregoing reasons, the City's motion for summary judgment (Item 67) is granted, and the complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment in favor of defendant, and to close the case.

---

[3] The City also seeks summary judgment on the ground that the court's ruling in *M.O.C.H.A.I* constitutes the law of the case barring relitigation of the same issue in *M.O.C.H.A. II*. Because the court has found that the claims in the complaint are precluded by the doctrine of collateral estoppel, the court declines to address defendant's "law of the case" argument.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: May 10, 2010
p:\pending\2003\03-580.may4.10